## Case No. 12,529.

### SCOTT v. EVANS.

[1 McLean, 486.] [1]

Circuit Court, D. Ohio. July Term, 1839.

ADVERSE POSSESSION—COTENANTS—LAPSE OF TIME—ASSIGNMENT—NOTICE.

1. Lapse of time a good bar to a claim of title though the statute of limitations would not operate in the case.

2. An adverse possession held by a tenant in common, to the exclusion of his cotenants, bars under the statute or by lapse of time.

3. An assignment recited in a patent that the warrant was assigned by the representatives of A. B. is no notice to the purchaser that the assignment was made without authority.

[Cited in Acer v. Westcott, 46 N. Y. 390.]

[This was a bill in equity by Joseph Scott against Richard Evans.]

Mr. Wilcox, for complainant.

Mr. Swan, for defendant.

LEAVITT, District Judge. This case is submitted to the court upon the bill and answer. The bill alleges that the complainant, a citizen of the state of Virginia, is the son and only heir of Stephen Scott, who served in the Revolution, in the Virginia line, and was entitled to two hundred acres of land, from said state; that said Scott continued in the service till the capture of Charlestown, where he was taken prisoner, and shortly after died, a prisoner,

[1] [Reported by Hon. John McLean, Circuit Justice.]

leaving a widow, Mary Scott, who on the 15th of August, 1787, (the complainant then being an infant) assigned her right to her deceased husband's claim to William Putnam; that on the 10th of November, 1792, Putnam assigned his right to William Bigger, who, on the 25th of January, 1793, obtained a land warrant for the same; that on the 5th of July, 1794, Bigger assigned the warrant to John Graham, who located it, with others, on one thousand two hundred and ninety-six and two-thirds acres, in Highland county, Ohio, and obtained a patent therefor, dated February 3d, 1800. The bill also alleges, that the defendant is in possession of, and claims title to four hundred acres of land embraced in the patent to Graham; and that the complainant is entitled to the same proportion of said four hundred acres, that two hundred bears to one thousand two hundred and ninety-six and two-thirds acres. The bill further sets forth, that defendant and all under whom he claims, are chargeable in equity, with notice of his claim, and prays that defendant may answer under oath, and that he may be compelled to convey complainant's proportion of said land, and that the same may be set off to him in severalty. A copy of the patent to Graham reciting the assignments is exhibited and made a part of the bill.

The defendant in his answer sets up a legal title to three hundred and sixty-six acres of the survey of one thousand two hundred and ninety-six and two-thirds acres, obtained in the year 1800, by purchase from Nathaniel Massie, who sold it, for himself (being entitled to one-third as locator) and as the agent and attorney of the said John Graham. He also alleges that he settled on the land in the year 1801; has had peaceable possession since that time; and has made lasting and valuable improvements thereon: and moreover, that he had no notice of complainant's claim, or of any defect in his title, till about two years since, when he received a letter from Mr. Wilcox, the solicitor of complainant. informing him of the claim now set up. Defendant also insists, that he is an innocent purchaser, without notice; that he has a good legal right to the land; and that if complainant ever had any claim thereto, it is long since barred by the lapse of time: and he prays that the complainant may be held to strict proof.

No proof is exhibited in support of the allegation in the bill, that the complainant is the son and heir of Stephen Scott: and in the absence of such proof, the court could not render a decree, in his favor. But as the counsel for the defendant does not insist upon this point, the court will proceed to examine some other questions which are presented.

And first: Is the complainant barred by the lapse of time? The period of the complainant's birth is not explicitly set forth in the bill, but may be ascertained with sufficient certainty from other facts which are stated. It is alleged that his father was made prisoner at the capture of Charlestown, and died shortly after that event: from which it is safely inferred, that his death took place anterior to the close of the war; and consequently, that the complainant would not have been born, posterior to the year 1783. And assuming that to have been the year of his birth, he arrived at full age in the year 1804. Thirty-three years have therefore elapsed from his majority to the year 1837, when he first made known to the defendant, the claim which he now asserts. It is also an undisputed fact in the case that the defendant has been in peaceable possession of the land from the year 1801, till the year 1837.

It is assumed for the complainant, that having been absent from, or a non-resident of, the state of Ohio, the statute of limitations cannot be relied on, as a bar to his right. The facts of absence and non-residence are neither averred in the bill, or established by proof: and upon the authority of the principle laid down by the court, in the case of Piatt v. Vattier, 9 Pet. [34 U. S.] 415, these facts cannot properly be taken into consideration, without being averred and proved. In the case here referred to, these facts were proved, but were not alleged in the bill. And the court said. unless they were put in issue by the pleadings, they could take no notice of the proofs, "for, the proofs, to be admissible, must be founded on some allegations in the bill and answer." It was held therefore by the court, that the case, as presented, was not within any of the exceptions mentioned in the statute of limitations. But, as the answer relied generally upon the lapse of time, and not upon the statute, the court proceeded to render a decree upon the former ground. And in the present case, as the statute is not expressly set up in bar of the complainant's right, the court will consider it upon the ground of lapse of time.

The doctrine, that promptness and vigilance are required in the assertion of legal rights, has long received the sanction, both of courts of law and equity. Hence, for the purpose of quieting titles, and preventing litigious controversies. presumptions are raised and sustained, which are not based upon matters of proof. Thus after a lapse of twenty years, without the payment of interest, satisfaction of a debt will be presumed. Cruder v. Philadelphia Ins. Co. [Case No. 3,452]. And, after a long possession in severalty, a deed of partition may be presumed. [Hepburn v. Auld] 5 Cranch [9 U. S.] 262. So in the case of Elmendorff v. Taylor, 10 Wheat. [23 U. S.] 152, it is laid down, that courts of equity from the earliest ages have refused their aid to those who have neglected for an unreasonable length of time, to assert their claims, especially when the legal estate has been transferred to purchasers, without notice. In a case reported [Alexander v. Pendleton] 8 Cranch [12 U. S.] 462. it is said by the court, that an adversary possession of fifty years, though with knowledge of a better title, constitutes a good defence against that title.

But without multiplying references in sup-

port of the principle here laid down, it will be sufficient to notice the case of Piatt v. Vattier, 9 Pet. [34 U. S.] 405. That case was decided solely on the ground, that the complainant's right was barred by lapse of time. The court then refused to enquire into the validity of Bartle's title, under whom the complainant claimed, or whether the defendants, and other purchasers under Barr, had any knowledge of Bartle's title; and they placed this refusal upon the ground that these matters were not deemed necessary to a correct decision of the cause. They say, "that the lapse of time, is upon the principles of a court of equity, a clear bar to the present suit, independently of the statute." "There has been a clear adverse possession of thirty years, without the acknowledgment of any equity or trust estate in Bartle; and no circumstances are stated in the bill, or shown in the evidence, which overcome the decisive influence of such adverse possession."

Applying these principles to the case before the court, we cannot hesitate in saying, that the complainant's claim is barred by the lapse of time. He has slept upon his rights for the long period of thirty-three years, and has not alleged or proved any circumstances to explain or justify this unreasonable delay. The defendant has been in the undisturbed possession of the premises for thirty-six years, under a good legal title: and alleges in his answer, that he was a purchaser, without notice, of any opposing claim. Under this state of facts, the court cannot sanction the right to these premises, set up by the complainant.

It seems to be supposed, however, by the counsel for the complainant, that these parties are to be regarded as tenants in common of the land in question; therefore, that the doctrine of presumption, on the ground of lapse of time, does not apply. Without stopping to enquire, whether there is any just foundation for treating the interest of these parties, as constituting a tenancy in common between them, it is sufficient to say, that even on this assumption, the complainant is barred.

The complainant has referred to, and relies upon, the case of Butler v. Phelps, 17 Wend. 642, in support of this position. In that case Butler had conveyed by deed to Phelps and Blanchard two-thirds of the iron, and other ore, contained upon or within, a certain tract of land, described in the deed, with the right of entering upon the land, and digging and taking away, the ores. The grantees did not attempt to avail themselves of the right conveyed to them, for the period of thirty-four years, during which time the grantor, and his heirs, continued to occupy the land for agricultural purposes. After the lapse of this time, one of the grantees, and the heirs of the other, asked permission to enter upon the land, and dig for ores; which was refused: and they then brought an action of ejectment to establish their rights under the deed. It was insisted on the trial, that under the circumstances of the case, it was a fair presumption of law, that

the deed had been surrendered, or canceled, and the agreement between the parties abandoned. It was held however, that the parties were tenants in common of the right to the ores, and as there had been no adverse possession or exercise of this right, on the part of the grantor, or his heirs, until a short period before the commencement of the action of ejectment, the presumption insisted on, did not arise. The court held, that the long continued use and possession of the land, by the grantor and his heirs, for agricultural purposes, was not inconsistent with the grant, and therefore afforded no presumption, unfavorable to the rights of the grantees. But the court say expressly, if the possession of the grantor or his heirs, had been adverse, an ouster of the cotenants or a release of their interest, might be presumed.

It is contended also, that the defendant is to be regarded as a purchaser, with notice of the complainant's right, and therefore to be treated as holding the land in trust. It is claimed, that the reference to the assignments, as contained in the patent, raises a legal presumption of notice, and that this case is similar to that of Ware v. Brush [Case No. 17,171], heretofore decided by this court. But, we do not view the question arising on this point, in the present case, as involving the principle settled in the case referred to. In this case, the assignment is referred to in the patent as having been made, not by the widow, but the representatives of Stephen Scott, who, for aught that appears in the patent, might have been heirs of full age, and therefore competent to make the assignment, and convey a good title to the assignee. In the case of Ware v. Brush [supra], the executor of Hockaday gave an order, as executor, directing the register of the land office to issue a warrant to one Ladd, who, in virtue of such order, procured the warrant. And the court held, that the executor of Hockaday had no legal right to assign the claim, as it vested in the heirs of Hockaday, and not in the executor. In that case it was in proof, that there were minor heirs; and moreover, that there were other circumstances which cast suspicion upon the assignment by the executor. The court therefore held, the assignment by the executor to be void, and that the persons claiming the premises under the assignment by him, were to be considered as trustees for the heirs.

The bill is dismissed at the costs of the complainant.