EZRA W. ACER, Respondent, *v.* DANIEL P. WESTCOTT, impleaded with others, Appellants.

A recital in a deed, forming a link in the chain of title of any facts, which should put a subsequent grantee or mortgagee upon inquiry, and cause him to examine other matters, by which a defect in the title would be disclosed, is constructive notice of such defect. But the basis of this rule is negligence, and it is only applicable to cases, where the purchaser or encumbrancer is chargeable with gross negligence in not making the examination.

The recital in a deed was in substance, that it was made in pursuance of a contract with A., of whom the grantee was assignee, and as such entitled to the conveyance.

*Held*, that the legal inference from the facts stated was in support of the title, and there was nothing therein imposing upon a *bona fide* mortgagee, the duty of examining the contract or assignment, for the purpose of ascertaining if there were latent defects in the title, or latent equities in favor of the assignor.

(Argued September 8th, 1871; decided November 10th, 1871.)

APPEAL from a judgment of the General Term of the seventh judicial district, affirming a judgment entered in Monroe county in favor of plaintiff upon the report of a referee. (Reported below in 1 Lansing, 193.)

Prior to the 29th of January, 1864, Mrs. Charlotte H. Brown was the owner in fee of lots 55, 56, 57, 58, and 59, on the east side of Magne street, in the city of Rochester.

On that day, she, by written contract, agreed to convey all those premises, except thirty-three feet off of lot 55, to Ezra

W. Acer, the plaintiff herein, upon the payment by him of the sum of $1,200.

Acer was the owner in fee of lot No. 1 in the Whitney tract.

Prior to the 24th day of April, 1867, Acer had made such payments upon this contract, that there remained due only the sum of $550; and on that day he entered into a written contract with George G. Curtis, one of the defendants, to convey to him the premises described in Mrs. Brown's contract, and also lot No. 1, for the sum of $5,000, to be paid by Curtis, in part, by conveying to Acer other land, giving to Mrs. Brown a first mortgage to secure the sum due to her on Acer's contract, viz., $550; and giving to Acer a mortgage on the same premises of $3,380.20.

Acer had been negotiating with Mrs. Brown for the residue of lot 55. Curtis desired to obtain it; and after making the contract of April 24th, Acer and Curtis desired to make an arrangement with Mrs. Brown, by which she would execute a deed to Curtis instead of Acer, and take his bond and mortgage for the unpaid purchase-money remaining on Acer's contract.

In pursuance of their wishes she agreed to sell to Curtis the residue of lot 55 for $325, and include that with the land mentioned in her contract with Acer, in one deed, running directly to Curtis.

Accordingly, on the 3d day of June, 1867, she did, by deed dated on that day, for a consideration (as therein recited) of $1,550, convey to Curtis the premises embraced in the contract with Acer, and also the residue of lot 55.

The deed contains the usual covenants of warranty for quiet possession, and the following recital: "This conveyance is made in pursuance of a contract of sale of said premises made and entered into by the party of the first part, for a conveyance thereof to one Ezra W. Acer, of whom the said party of the second part has become the assignee or purchaser; and as such entitled to a fulfillment thereof, by virtue of this conveyance; said contract being dated January 29th, 1864."

It was placed by her in the hands of her agent, Mr. Crittenden, through whom the arrangement for it had been made by Acer and Curtis.

On the 5th of June, 1867, Curtis called on Crittenden, requested the delivery of the deed; and in response to Mr. Crittenden's inquiry, as to whether he (Crittenden) was authorized to deliver it under the agreement between him (Curtis) and Acer, was answered by Curtis that it was all right.

Crittenden thereupon delivered the deed to Curtis, and Curtis paid him $881.50 ($600 in money and his bond secured by mortgage for $281.50), that being the balance of $550 due on the Brown and Acer contract, and the price of the residue of lot 55.

On the same day the deed was placed on record, and Curtis executed to defendant, Wescott, a mortgage upon all the premises described in the deed from Mrs. Brown, as security for the payment of $6,000.

This sum was made up in part of a precedent indebtedness from Curtis to Acer, and in part of a present consideration as follows: Precedent debt, $3,700; present consideration, $2,850. Curtis was in possession when he received the deed from Mrs. Brown, and when he gave the mortgage.

The referee found, "that said Wescott was in no way privy to, nor had he any notice or knowledge of any fraud in regard to any of the matters aforesaid, on the part of said Curtis; and he received said mortgage to himself, without any intent or purpose, on the part of said Wescott, to defraud this plaintiff, nor had he any notice of the plaintiff's rights, except such as he may be charged with by the recital in the said deed from Mrs. Brown to Curtis."

And, as conclusions of law, he held:

1. "That Acer was entitled to receive from Curtis a mortgage of $3,380.20 upon the Magne street lots, second only to a mortgage to Mrs. Brown of $550."

2. "That, by the recital in the deed from Brown to Curtis, Wescott was chargeable with notice of Acer's right to such mortgage;" and,

3. "That Acer should have a lien on such premises for $3,280.20 prior to Wescott's, and that the mortgage of the latter should be postponed thereto."

*G. F. Danforth*, for appellant. Plaintiff must recover on case made by complaint. (*Field* v. *Mayor*, 6 N. Y., 179; *Wright* v. *Delafield*, 25 id., 270.) Fraud was not proved, and plaintiff not entitled to the relief granted. (*Wilde* v. *Gilson*, 1 H. of L. Cases, 605, 622.) The recital in the deed was no notice to Wescott of Acer's equities. (*Earl of Montague* v. *Preston*, 2 Vent., 170; *Hyatt et al.* v. *Phifer*, S. C. of North Carolina; *Johnson* v. *Crane*, 40 Barb., 78; 13 Ves., 120; Mod. Ch., 327; Newland, 511; *Bonner* v. *Ware*, 10 Ohio, 465; *Bell* v. *Duncan*, 11 id., 192; *Brush* v. *Ware*, 15 Pet., 94; *Lessee of Buckhart et al.* v. *Bucher*, 2 Binn., 455; *Scott* v. *Evans*, 1 McLean, 486; *Morse* v. *Hunter*, 1 Gilm., 317; *Gilbert* v. *Petiter*, 38 Barb., 572; S. C., 38 N. Y., 165; *Jones* v. *Smith*, 1 Hare, 43; S. C., 1 Phill., 244.) Purchaser not bound to go elsewhere to ascertain if recital is false. (*Frost* v. *Beekman*, 1 Johns. Ch., 288; S. C., on appeal, 18 Johns., 544; *Peck* v. *Mallam*, 10 N. Y., 509; *Johnson* v. *Crane*, 40 Barb., 78–88; 2 Mason C. C., 531; *Curtis* v. *Root*, 28 Ill., 376.) The question involved is one of good faith. Gross or culpable negligence must be shown. (*Dey* v. *Dunham*, 2 Johns. Ch., 182; *Jackson* v. *Burgott*, 10 Johns., 457; *Jackson* v. *Van Volkenburgh*, 6 Cow., 260; *Fraser* v. *Western*, 1 Barb. Ch., 220; *Brown* v. *Blydenburgh*, 7 N. Y., 141; *Williamson* v. *Brown*, 15 id., 354; *Ware* v. *Egmont*, 31 E. L. & Eq., 87.) Acer was guilty of negligence in not disclosing his equities, and must take the consequences. (1 McN. & G., 446; *Deane* v. *Hale*, 3 Russ., 11, 14, 21; *Rice* v. *Rice*, 2 Drew. Ch., 73; *Hewitt* v. *Loosemore*, 9 Hare, 449; *Dowle* v. *Saunders*, 2 H. & M., 242; *Colyer* v. *Finch*, 5 H. L. C., 905; *Perry*, *Herrick* v. *Atwood*, 2 De G. & J., 21; *Layard* v. *Maud*, 4 L. R. Eq. Cas., 397, 404.) Defendant improperly charged with costs. (*Murray* v. *Ballou & Hunt*, 1 Johns. Ch., 565–581; *Murray* v. *Lylburn*, 2 id., 441.)

*W. F. Cogswell,* for respondent. Recital in deed constructive notice to defendant. (*Earl of Montague* v. *Preston,* 2 Vent., 170; *Reeder* v. *Barr,* 4 Ohio; *Howard Ins. Co.* v. *Halsey,* 4 Seld., 271, 274.)

PECKHAM, J. There is but one question in this case. Was the recital in the deed from William Brown to Curtis, notice to the defendant of the equitable rights of the plaintiff in the premises conveyed? If it were, then the defendant was not, in law, and could not be a *bona fide* purchaser. If it were not, he could be, and was a *bona fide* purchaser to the extent of the money advanced to Curtis in the mortgage. There was some evidence in the case as to other notice to defendant of plaintiff's rights. But the referee directly negatives every other notice, and distinctly finds the defendant free from all fraud, and that he had not "any notice of the plaintiff's rights, except such as he may be charged with by the recital" in the deed.

The recital is as follows : "This conveyance is made in pursuance of a contract of sale of said premises, made and entered into by the party of the first part for the conveyance thereof to one Ezra W. Acer, of whom the said party of the second part has become the assignee or purchaser, and as such entitled to a fulfillment thereof, by virtue of this conveyance; said contract being dated January 29th, 1864."

It is insisted that this was constructive notice to the defendant of the plaintiff's equities in the property. That having this notice, he was bound to have examined that contract and its assignment to the defendant, and thus he would have ascertained the equities of the plaintiff. Constructive notice may be said to be a knowledge by the purchaser of some facts which should put him upon inquiry, and require him to examine other matters that would generally unfold the true title.

If he omit to make the examination in a proper case, he is conclusively charged with negligence, and with notice of the defect in the title. (1 Story's Eq., 399, and cases cited.) But

if he exercised due diligence and fail to discover the defect, the presumption of negligence is rebutted, and he is regarded as a *bona fide* purchaser. (*Williamson* v. *Brown*, 15 N. Y., 354.) It may well be that the defendant in this case used such diligence. I do not propose to discuss it. The case was not disposed of upon that ground. The findings make these parties equally innocent. Upon whom, then, does the law cast the loss ?

The referee imposes it upon the defendant, upon the ground chiefly, that though the recital was good evidence as against Mrs. Brown, the vendor, it was none as against Acer ; and, hence, as the defendant is presumed to know the law, he should not, and could not, rely upon it as to him. The referee was right as to the law that the recital would not legally bind Acer, as he claimed, prior to the deed. (*Penrose* v. *Griffith*, 4 Binn., 231.) But that is not the precise principle upon which this doctrine of constructive notice rests. The referee made it a question of evidence, rather than of notice. The whole basis of the rule is negligence in the purchaser. It is a question of good faith in him, not of strict legal right.

Has the purchaser been guilty of such negligence, in not seeing this contract, as would justly cast an imputation of fraud upon him by the omission ? Was this omission what the law terms " *crassa negligentia* " ? These are the proper points of inquiry in a case like this. (*Moore* v. *Boddan*, 2 cases in C. of S., 501; *Jones* v. *Smith*, 1 Hare., 43 ; same case on appeal before Lord Chancellor LYNDHURST, 1 Phillips, 244 ; *Ware* v. *Egmont*, 31 Eng. L. & Eq., 89, 97.) In the last case Lord Ch. CRAMWORTH observed : " The question, where it is sought to affect a purchaser with constructive notice, is not whether he had the means of obtaining, and might, by peculiar caution, have obtained the knowledge in question, but whether the not obtaining it was an act of gross or culpable negligence." (See also *Hiern* v. *Mill*, 13 Vesey, 120.) In the case at bar, when the deed was given, the contract is legally supposed to be executed, is fulfilled. The contract is not recorded ; and in searching the title, the legal title, it is

not a paper necessarily to be found or referred to. It would be fair to infer, ordinarily, that a grantor who had given such a contract, and then executes a deed to an assignee thereof, having himself a direct interest to know who the assignee was, and whether there was one, had fulfilled the requirements of the contract, and executed the deed to the legal assignee, where all parties have power to act. To hold such a recital, constructive notice, would be extending the doctrine, already carried quite far enough, as the three last cases cited declare. The lord chancellor in the last case adds : " I must not part with this case without expressing my entire concurrence in what has, on many occasions of late years, fallen from judges of great eminence on the subject of constructive notice, that it is highly inexpedient for courts of equity to extend the doctrine."

If the recital had been such as to bind Acer also, of course no legal question could arise of this character.

The doctrine laid down in the books that all deeds referred to, upon which the title is based, must be examined as to any facts they may contain at the purchaser's peril, does not reach this case.

If the title on the recital of the assignment appears ·to have come through an executor or administrator, or a guardian without power of himself to convey, it is the duty of the purchaser to ask for evidence that it has been legally done. Lord Ch., CRAMWORTH, in *Ware* v. *Egmont, supra,* at page 96, says : " If indeed the title had depended on their being guardians, it would have been the duty of the purchaser to ask for evidence on the subject." (See *Briggs* v. *Davis,* 20 N. Y., 15 ; 21 id., 574 ; *Swartwout* v. *Curtis,* 4 N. Y., 415.)

(*Neesome* v. *Clarkson,* 2 Hare, 162, 163). In this case the recital showed the defect of title, so in *Brush* v. *Ware* (15 Peters, 93) ; *Buckhart* v. *Buchess* (2 Bain., 455) ; *Scott* v. *Evans* (1 McLean, 486) ; *Morse* v. *Hunter* (1 Gil., 317). When the assignment, as shown by the recital, appears to have been made by the proper person, the purchaser is not compelled to look for any latent defect, or latent equity. See

last case. In *Reeder* v. *Barr* (4 Ham. Ohio R., 458), the court recognizes this rule, and see the cases in the note. In *Bell* v. *Duncan* (11 Ohio, 192), it is held, that when the recital of an assignment is by persons competent to convey, there is no presumptive notice of latent defects in the assignments, no notice to look for latent equities, otherwise if the recital be of persons not competent to convey title. *Coppin* v. *Ferryhough* (2 Br. Ch. Ca., 291) is not an exception. There it appears, page 295, by the argument of the counsel (the case is not stated fully by the court), that the interests of persons claiming under the surrendered lease were excepted in the conveyance.

The defendant in the case at bar, was not bound to call upon the plaintiff to learn whether his contract had been properly assigned or not. (*Buttrick* v. *Holden*, 13 Met., 355).

In the language of the lord chancellor, in *Jones* v. *Smith* (1 Phillips, 244, at 256, above referred to): " Undoubtedly in the present case, a cautious, prudent, circumspect person, would not have advanced the money without the production of the deed. But that is not the principle on which cases of this sort have been decided." Again: "I do not consider this a case of gross negligence, but the party having only omitted that caution which a prudent, wary, and cautious person might, and probably would have adopted," is not to be charged with notice. The majority of men are not " wary," and where no bad faith is found, the law does not usually require such conduct, as can be expected only from the " wary," to protect an innocent purchaser from loss.

Suppose this deed to Curtis had been from Acer himself, and it had contained a recital, that it was given pursuant to, or in execution of a contract of purchase of such a date, but in fact, that contract required the execution of a mortgage to Acer for $3,000, which had never been given, would a mortgagee from Curtis, acting in good faith, be chargeable with knowledge or notice of the contents of that contract? Would he thus have constructive notice so as to be postponed to that mortgage.

Most clearly not. There is nothing in the title deeds, or in the title that gives any reference to that equity, any reference to that defect; and there is no reason, on the face of the papers, why that contract should be examined by a purchaser. Nor was there any reason in the case at bar. It is unlike *Bisco* v. *Barberry* (1 Ca., in Ch., at 291); *Moore* v. *Bennett* (2 id., 246.)

If any defect had been alluded to in the recital, or if such defect would have appeared in any deed or will in his chain of title, then the purchaser is charged with constructive notice thereof, especially if such deed or will be recorded. (*Gibert* v. *Peteler*, 38 N. Y., 165; *Jumel* v. *Jumel*, 7 Paige, 591; *Grimstone* v. *Carter*, 3 Paige, 421; *Tuttle* v. *Jackson*, 6 Wend., 213; *Childs* v. *Clark*, Barb. Ch., 52.) In the language of the able Vice-Chancellor Sir JAMES WIGRAM, in *Weet* v. *Reid*, (2 Hare., at 260); "let the doctrine of constructive notice be extended to all cases (it is, in fact, more confined). Let it be extended to all cases, in which the purchaser has notice that the property is affected, or has notice of facts raising a presumption that it is so, and the doctrine is reasonable, though it may sometimes operate with severity. But once transgress the limit which that statement of the rule imposes; once admit that a purchaser is to be affected, with constructive notice of the contents of instruments not necessary to, nor presumptively connected with the title, only because by possibility they may affect it, and it is impossible to stop short of the conclusion, that every purchaser is affected with notice of the contents of every instrument, of the mere existence of which he has notice."

The purchaser must be presumed to investigate the title, and to examine every deed or instrument forming a part of it, especially if recorded. In all the cases referred to, where recitals have been held to be constructive notice of the defect or of the equity, the recital itself directly referred to the defect. That is, it referred to a title as conveyed by an executor or administrator, or by a widow or her second hus-

band, when the title was in the first, or by a guardian, etc. In all cases, other than conveyances or assignments by parties themselves competent to assign, the purchaser is bound to see that the conveyances have been made according to law, so as to carry the title. Not so where the recital states nothing to arrest the attention or arouse the suspicion of a person of ordinary care, as that the conveyance is made pursuant to a contract with the vendor, or with Mr. Acer, the assignor of the vendee, who assigned the contract to him, and he is entitled to a deed in fulfillment thereof. The parties being all competent to convey, no constructive notice of Acer's equity is found there. But as a different case may be made by plaintiff upon another trial, the judgment is reversed and a new trial ordered, costs to abide event.

All concur except ALLEN, J., dissenting.

Judgment reversed.